```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| STEPHEN D. O'BYRNE,<br><br>     Plaintiff,<br><br>     v.<br><br>AFG INDUSTRIES, INC., and<br>PRESUMPSCOT FREEMAC, INC.<br>d/b/a SIGCO,<br><br>     Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 05-3731 (JEI)<br><br>**OPINION** |

**APPEARANCES:**

SPADACCINI MAIN, LLC, and
THE YANKOWITZ LAW FIRM, LLP
By:  Kevin H. Main
98 Franklin Corner Road
Lawrenceville, NJ 08648
     Counsel for Plaintiff

CAPEHART & SCATCHARD
By:  Betsy G. Ramos
     Latonya N. Bland
Laurel Corporate Center
8000 Midlantic Drive - C.S. 5016
Suite 300
Mount Laurel, NJ 08054
     Counsel for Defendant AFG Industries, Inc.

LAW OFFICES OF JONATHAN R. WESTPY
By:  Jonathan R. Westpy
     Timothy R. Holman
100 Eagle Rock Avenue
East Hanover, NJ 07936
     Counsel for Defendant Presumpscot Freemac, Inc.

**IRENAS,** Senior District Judge:

Plaintiff commenced this action on July 25, 2005, against Defendants AFG Industries, Inc. ("AFG") and Presumpscot Freemac, Inc. ("Sigco"). Plaintiff alleges that both Defendants negligently failed to provide a safe work environment, causing his personal injury. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). In this diversity case, the law of New Jersey, the forum state, will be applied to the substantive issues. "[N]either party suggests any reason why a New Jersey court would apply other than its own law to this dispute and both, by the case law cited in their briefs, implicitly recognize New Jersey as providing the controlling law. . ." *American Cyanamid Co. v. Fermenta Animal Health Co.*, 54 F.3d 177, 180 (3d Cir. 1995). Defendants move for summary judgment. For the reasons set forth below, their motions for summary judgment will be granted.

**I.**

Plaintiff was self-employed as an independent truck driver. (O'Byrne Aug. 10, 2006, Dep., at 16:12-18). Prior to July 24, 2003, the date of his injury, Plaintiff had been self-employed for approximately three and half years. (*Id.* at 16:14-22). Plaintiff contracted with New Prime, Inc., a corporation located in Springfield, Missouri, to provide trucking services. (*Id.* at

2

18:11-14). New Prime, in turn, assigned Plaintiff to various work locations. (*Id.*).

New Prime assigned Plaintiff to exclusively serve Defendant AFG for two years prior to the accident. (O'Byrne Aug. 10, 2006, Dep., at 17:1-14). Plaintiff was responsible for properly securing each load by placing tarping and straps over the loads. He also ensured that the loads arrived safely to their destinations. (*Id.* at 115:17-116:2).

The AFG facility is located in Cinnaminson, New Jersey. Plaintiff would arrive at the facility and an AFG employee would load his trailer with flat glass to be transported. (O'Byrne Aug. 10, 2006, Dep., at 18:2-6, 18:23-19:21). Plaintiff was responsible for placing Styrofoam boards between the sheet glass or stokes of glass as the AFG employees were loading the shipment onto the trailer. (*Id.* at 20:15-19).

On July 23, 2003, Plaintiff arrived at the Cinnaminson facility to load his truck. Plaintiff placed Styrofoam between each stack, and AFG employees placed each stack of glass onto the flatbed trailer. (O'Byrne Aug. 10, 2006, Dep., 20:2-24). Plaintiff and Willie Hobson, another contractor for New Prime and a friend of Plaintiff, covered the load with the tarp and straps. (*Id.* at 25:24-26:15). The load was covered with wood crates with tarping over it. The tarp was held in place by rubber straps with hooks on both ends. These hooks were attached to the

3

trailer through grommets on the tarp.  (*Id.* 21:16-23:20). Plaintiff climbed to the top of the load on a ladder in order to secure the tarp.  He stood on top of the load and rolled the tarp out over the entire the load.  (*Id.* at 26:21-28:5).

Plaintiff inspected the loads before he left the facility. (O'Byrne Aug. 10, 2006, Dep., 116:7-10).  The inspection was performed to ensure that the load was properly secured, that it was properly packed, and that there was no broken glass.  (*Id.* at 116:9-23).  Plaintiff also checked to ensure that the crates were not broken, (*Id.* at 117:15-21), and that no nails were sticking out.  According to Plaintiff, he did not observe any nails or find anything unusual with the shipment after inspection on July 23, 2003.[1]  (*Id.* at 128:13-20).

Plaintiff was to deliver the glass load to Defendant Sigco in Portland, Maine, where he had been many times.  (O'Byrne Aug. 10, 2006, Dep., at 29:22-30:2).  After leaving Cinnaminson, Plaintiff stopped in Massachusetts for a two-hour break.  During that time, he inspected the load again, and there appeared to be no problems during this inspection.  (*Id.* at 30:3-25).

When Plaintiff arrived at the Sigco facility, he waited outside while another trailer was unloading.  Plaintiff removed

---

[1] Plaintiff signed a Bill of Lading prior to leaving the AFG facility.  (Df. Ex. C).  The Bill of Lading contains a provision in which Plaintiff acknowledged that the shipment was in apparent good order, and the manner of loading was adequate. (*See* Df. Ex. C).

the straps from the load and waited in his cab.  When the Sigco employees were ready to receive Plaintiff's load, he backed the truck into the loading dock, removed one tarp from the load in the rear of the trailer and proceeded to remove the tarp from the front of the trailer.  (O'Byrne Aug. 10, 2006, Dep., at 31:20-32:6).

To remove the tarp, Plaintiff climbed on top of the crate, and walked on the apex or side of a heavy wooden crate while rolling the tarp.  The wooden crate was four to six inches wide, and 84 inches tall.  (O'Byrne Aug. 10, 2006, Dep., at 37:23-38:15).  The wooden crates on which Plaintiff was walking at the time of his accident sat on top of an A-frame with four-inch metal feet.  The A-frame was on the flatbed of the trailer.  (*Id*. at 36:16-37:22).

Plaintiff claims that as he was removing the tarp from the load in the front of the trailer, his left foot caught on something and he lost his balance and fell over the side of the truck.  (O'Byrne Aug. 10, 2006, Dep., at 32:9-33:24, 37:23-38:4 and 41:7-25).  Plaintiff does not know specifically what caused him to trip.  He believes, based on his experience, that it was either a nail sticking out of the wood or a broken board.  (*Id*. at 42:1-11).

According to Plaintiff, there are other methods for removing tarp, such as the use of a harness or boom, both of which are

5

provided by the company receiving the shipment.  (O'Byrne Aug. 10, 2006, Dep., at 106:21-107:5).  In fact, Plaintiff testified that "[s]omeone may . . . not feel comfortable going on top of a load so they'll have a crane operator take the tarp up."  (*Id.* at 106:24-107:1).  However, this method could take some time, and Plaintiff testified that he was in a hurry to finish the job on the day of the accident, and felt that he could not have waited for the equipments.  (*Id.* at 107:2-4).  Therefore, he did not request any safety equipments.

Another method to remove the tarp, while avoiding the potential danger of falling, is to rip it off or roll it off while standing on a ladder.  Plaintiff claims that this method could tear the tarp by catching on a piece of wood or a nail.  (O'Byrne Aug. 10, 2006, Dep., at 112:10-18 and 114:4-115:13).

Plaintiff acknowledged that climbing on top of the load created a possibility that he could fall.  He also recognized that it was dangerous to walk on top of a load.  (O'Byrne Nov. 14, 2006, Dep., at 48:21-49:2).

## II.

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation and citation omitted; ellipsis in original).

### III.

Plaintiff alleges that Defendants AFG and Sigco negligently failed to provide a safe work environment. Under New Jersey law, Plaintiff bears the burden to prove not only that Defendants were negligent, but also that their negligence was a proximate cause of his injuries. *O'Brien (Newark) Cogeneration, Inc. v. Automatic Sprinkler Corp. of America*, 361 N.J. Super. 264, 274 (App. Div. 2003) (citing *Paxton v. Misiuk*, 34 N.J. 453, 463

(1961)).

Under New Jersey law, negligence is "conduct which falls below a standard recognized by the law as essential to the protection of others from unreasonable risks of harm." *Sanzari v. Rosenfeld*, 34 N.J. 128, 134 (1961). Generally, "it is not necessary for the plaintiff to prove the standard of conduct violated by the defendant. It is sufficient for plaintiff to show what the defendant did and what the circumstances were." *Id.* In other words, to show that Defendants were negligent, Plaintiff must identify an action or omission by Defendants, as well as the circumstances surrounding the accident, such that a reasonable fact finder may conclude that the action or omission fell below a standard of care required by the law. *See Id.*

To meet the burden of establishing Defendants' negligence, the mere showing that an accident occurred or that an injury suffered is insufficient. *Long v. Landy*, 35 N.J. 44, 54 (1961). "Negligence is a fact which must be shown and which will not be presumed." *Id.* "An inference can be drawn only from proved facts and cannot be based upon a foundation of pure conjecture, speculation, surmise or guess." *Id.* (citing *Rivera v. Columbus Cadet Corps of America*, 59 N.J. Super. 445 (App. Div. 1960)).

In this case, Plaintiff failed to show any act or omission by Defendants that could constitute negligence. With respect to Defendant AFG, Plaintiff did not produce any evidence indicating

8

that the glass shipment was packaged in a negligent manner. Indeed, Plaintiff's deposition testimony supports an inference that Defendant AFG's employees loaded the glass in a routine manner.  For example, Plaintiff testified that AFG employees placed each stack onto the flatbed trailer as he placed Styrofoam between each stack of glass.  (O'Byrne Aug. 10, 2006, Dep., 20:2-24).  In addition, Plaintiff inspected the loads before he left the facility, apparently no problem was found.  (*Id.* at 116:7–10).  A thorough search of the record by the Court failed to uncover any evidence of Defendant AFG's negligence.  Thus, the Court will grant summary judgment in favor of Defendant AFG.[2]

With respect to Defendant Sigco, Plaintiff testified that he climbed on top of the crate to remove the tarp.  However, Plaintiff did not testify that Defendant Sigco or any of its

---

[2] The doctrine of *res ipsa loquitur* is inapplicable here. Under New Jersey law, the doctrine creates "an allowable inference of the defendant's want of due care" when the following conditions have been shown: "(a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality [causing the injury] was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect." *Bornstein v. Metropolitan Bottling Co.*, 26 N.J. 263, 269 (1958).

Plaintiff fails to meet elements (b) and (c).  First, the instrumentality causing the injury, the wood crates, were loaded by the joint efforts of Defendant AFG's employees and Plaintiff, and were under Plaintiff's exclusive control throughout the shipment. (*See* O'Byrne Aug. 10, 2006, Dep., 20:2-24 and 116:7–10).  In addition, Plaintiff admitted that by climbing on top of the wood crates, his action created a possibility of injury.  (O'Byrne Nov. 14, 2006, Dep., at 48:21-49:2).

employees requested that he perform this task.  Indeed, Plaintiff acknowledged that standing on top of the crates was dangerous, (O'Byrne Nov. 14, 2006, Dep., at 48:21-49:2), and that much safer methods for removing the tarp were available.  (O'Byrne Aug. 10, 2006, Dep., at 106:21-107:5).  However, Plaintiff did not request any safety equipments or assistance from Defendant Sigco because those methods could be time consuming.  Plaintiff also testified that on the day of the accident, "I need to get out of here now and I feel comfortable taking it up the ladder."  (*Id.* at 107:2-4).

This evidence simply shows that Plaintiff climbed on top of a wood crate, then tripped and fell.  Nothing in the record shows that Defendant Sigco performed an act that caused Plaintiff's injury.  In addition, Plaintiff did not request safety equipment or assistance from Defendant Sigco because he wanted to leave the Sigco facility and was impatient.  Because Plaintiff never requested assistance, Defendant Sigco did not unreasonably refuse to help.  The record does not contain any contrary evidence.

Thus, according to Plaintiff's testimony, the nexus between the accident and Defendant Sigco is simply that Plaintiff sustained injury on Defendant Sigco's property.  This evidence is insufficient to support an inference of Defendant Sigco's negligence.  The Court will grant summary judgment in favor of

Defendant Sigco.[3]

## IV.

For the reasons set forth above, the Court will grant Defendants' motions for summary judgment on all counts. The Court will issue an appropriate order.

Date: July 26, 2007

s/Joseph E. Irenas
JOSEPH E. IRENAS, S.U.S.D.J.

---

[3] Plaintiff's attempt to frame his claims under the theory of premises liability fails under New Jersey law for two reasons: (1) the hazard here, namely the wood crate, was "obvious and visible to [Plaintiff] upon ordinary observation." *Izhaky v. Jamesway Corp.*, 195 N.J. Super. 103, 107-08 (App. Div. 1984); and (2) Plaintiff created the very hazard which caused his injury when he shipped the wood crate onto Defendant Sigco's property. *See Muhammad v. New Jersey Transit*, 176 N.J. 185, 198 (2003) ("'[T]he general principle is that the landowner is under no duty to protect an employee of an independent contractor from the very hazard created by the doing of the contract work. . .'") (quoting *Gibilterra v. Rosemawr Homes*, 19 N.J. 166, 170 (1955)).